WINN (UNITED STATES v.). See Case No. 16,740.

---

## Case No. 17,876a.

### WINNE v. The CARROLL.

[14 Betts, D. C. MS. 57.]

District Court, S. D. New York. Dec. 20, 1848.

COLLISION — SAILING VESSELS IN EAST RIVER — COSTS IN ADMIRALTY.

[1. Failure of a sloop running before the wind in the East river to foresee the point at which an approaching schooner will run out her tack, so as to keep out of her way when she goes about, is a fault barring recovery for an ensuing collision.]

[2. When the blame for a collision is found to lie with the libelant alone, the costs will be taxed against him.]

[This was a libel by Gilbert G. Winne against the schooner Carroll to recover damages for a collision.]

PER CURIAM. The sloop Hornet, owned by the libelant, and the schooner Carroll, came in collision the afternoon of the 16th of August last in the East river between Grand street and Williamsburg Ferry, and this action seeks to recover the damages sus-

tained by the sloop on this occasion. The wind was fresh, about south, with perhaps a slight inclination east, and tide ebb. The sloop was loaded with stone, and was beating down against as much wind as she could well bear. The schooner was loaded with lumber on deck, and coming up before the wind to make a berth on the New York side above Grand street. To accomplish that, she came up into the wind enough to enable her to drop her mainsail, and then, under her jib, was bringing her head towards the point she intended to make. There is some indistinctness and ambiguity in the testimony describing this manœuvre. No witness on board the sloop at the time has been examined, and the evidence of those observing the occurrence from the shore does not concur in respect to it. Prettyman was on his vessel at the foot of Delancey street; Barry and Hare were in front of a house near the Williamsburg Ferry,—all a distance of several hundred yards from the vessels. Prettyman says, when struck, the sloop was pointing towards Brooklyn on the Long Island shore, the wind about S. E., her mainsail taken in, and nothing but her jib set, and had little or no headway; she was heading to the wind. Barry says the sloop was standing right up the river, under her jib, and he did not observe she went into the wind to let her mainsail run. Mr. Barry's version is the most perplexing of all. He says the wind was S. or S. S. W.; that the sloop hove about to let down her mainsail and run off to about S., paying off by her jib till her head was S. or S. W., in which situation the schooner struck her on her larboard bow, the sloop at the time heading W. N. W., and to windward of the schooner.

It would be difficult to deduce from this evidence any reliable description which would inculpate the conduct of the sloop. But, without discussing it minutely, I think the testimony on the part of the claimants exonerates the schooner from all fault, and fixes the blame on the sloop. It is consistent, in its various particulars, with the libel, and the testimony of Barry and Prettyman, adding some facts which would more probably be noticed by those on the schooner, and the other witness near them in another vessel sailing in the same direction. The schooner made her starboard tack, from the New York shore, over as near to the Long Island side as was customary and proper to run, on account of a shore eddy at that point; the sloop at that time being before the wind, running directly up the river. As the sloop came about on her larboard tack towards New York, and was getting full, but with imperfect headway, the schooner was observed within a few yards of them in the act of veering round on the wind, having dropped her mainsail, and at that time and within that space there was no means by which the schooner could avoid a collision.

Want of precaution on the part of the sloop in two important particulars is established by the proof: (1) She should have foreseen at about what point the schooner's starboard tack would run out, and so placed herself as not to impede that movement, or be in the way of the schooner when she came about. The sloop was before the wind, and could take such direction or position as she desired. (2) She was loaded on deck with lumber, and had no lookout forward, and the circumstances raise strong presumption that her helmsman did not see the schooner, and brought his vessel into the wind without regard to the position and right of way of the other. It is manifest the two vessels struck when each had acquired but slight headway under their respective manœuvres, of tacking and coming round before the wind, and the decided import of the evidence is that the sloop was to the windward, and brought herself round either against the schooner, or into her track, so as to render it unavoidable that the schooner must come upon her.

In this view of the case I must declare that the libelant has established no cause of action in his own favor, and that a decree must accordingly be rendered discharging the schooner from the suit. The matter of costs is undoubtedly very much under the discretion of the court. Canter v. American & Ocean Ins. Co., 3 Pet. [28 U. S.] 319; [U. S. v. The Malek Adhel] 2 How. [43 U. S.] 237. The general principle at law and equity is that costs in causes of damage in this court follow the decision. The Ebenezer, 7 Jur. 1117; The Athol, 1 W. Rob. Adm. 374. But in cases of collision the usage is to charge them on the party most to blame. The Celt, 3 Hagg. Adm. 321. If neither is to blame, each party pays his own costs. The Washington, 5 Jur. 1067. And in the English admiralty, when both are to blame, it would seem that the costs are imposed on both in common (Id.), although 1 W. Rob. Adm. 26, citing Hay v. Le Neve, leaves each party to pay his own costs. The negligence and blame leading to the damage in this case being on the part of the libelant himself, the libel must be dismissed, with costs. The Harriett, 1 W. Rob. Adm. 188.